5

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 1 6 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>        Respondent, | §<br>§<br>§ | |
| vs. | §<br>§ | C.R. NO. B-99-362-S1 |
| BENITO YBARRA,<br>        Petitioner.<br>(C.A. NO. B-00-119) | §<br>§<br>§ | |

RESPONDENT'S ANSWER TO SECTION 2255 MOTION

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, hereinafter "the government", by and through the United States Attorney for the Southern District of Texas, files this Answer to Section 2255 Motion.  In support thereof, the government would respectfully show the court the following:

I.

## JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2255.

II.

## DENIAL

The government denies each and every allegation of fact made by Movant, hereinafter, "Ybarra", except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

III.

STATEMENT OF THE CASE

A.   Course of Proceedings.

Ybarra was initially charged along with Manuel Mares-Martinez ("Mares") and Juan Octavio Cienfuegos-Ramirez ("Cienfuegos") on September 14, 1999, with possession with intent to distribute 259 kilograms of marihuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). On October 12, 1999, Ybarra, Mares, and Cienfuegos, were charged in a superseding indictment alleging conspiracy to possess with intent to distribute more than five kilograms of cocaine and one hundred kilograms of marihuana (Count One), conspiracy to possess with intent to distribute more than five kilograms of cocaine (Count Two), and possession with intent to distribute 259 kilograms of marihuana (Count Three).  Ybarra was charged in Counts One and Three

On January 25, 2000, Ybarra entered a plea of guilty to Count Three which alleged possession with intent to distribute 259 kilograms of marihuana.  The plea agreement provided that the government agreed to recommend a three level credit for acceptance of responsibility, a sentence at the lowest end of the applicable guideline range, a possible eligibility for the "safety valve" provision of 18 U.S.C. 3553(f), and dismissal of the remaining count of the indictment (RA. 26).[1]

---

[1] "RA" refers to the transcript of the rearraignment proceeding. "SH" refers to the transcript of the sentencing hearing; the number following "RA" and "SH" refers to the page number of the transcript.

This court imposed Ybarra's sentence on May 1, 2000.
Ybarra's counsel, Mr. Sheldon Weisfeld, advised the Court that
there were no objections to the presentence report (PSR) (SH 2).
The Court asked if Ybarra was eligible for the "safety valve" (SH
2). Mr. Weisfeld stated that he felt Ybarra should have been
eligible for the "safety valve" reduction, but was not eligible
because he had an extra criminal history point (SH 3). The
Probation Officer confirmed this and advised the Court that
Ybarra was not eligible for the reduction because he had three
criminal history points (SH 3). Ybarra provided a statement in
allocution (SH 4). Mr. Weisfeld presented argument to the Court
on an appropriate sentence and advised that although the
government was not making a motion for downward departure due to
substantial assistance, Ybarra had tried to be cooperative with
the government (SH 4-6).

The PSR found that Ybarra's adjusted total offense level was
26, that his criminal history category was II, for a guideline
imprisonment range of 70 to 87 months (PSR ¶ 81).[2] Ybarra was
not awarded a downward adjustment for acceptance of
responsibility because he tested positive for cocaine on November
15, 1999, while under the supervision of the U.S. Pretrial
Services Office (PSR ¶ 37). Ybarra was sentenced to the custody
of the Bureau of Prisons to serve a 70-month term of confinement
which was to be followed by a five-year term of supervised
release (SH 6-7). Ybarra was ordered to pay the mandatory

---

[2] "PSR" refers to Ybarra's presentence report; the number following refers to the
paragraph of the PSR.

special assessment of $100 which was remitted on the motion of
the government (SH 7-8).

    Ybarra did not file an appeal. Ybarra initiated the instant
action for relief under 28 U.S.C. § 2255 on August 1, 2000.

B.    <u>Statement of facts</u>.

    On April 12, 1999, agents established surveillance at the
home of Cienfuegos in Brownsville (PSR ¶ 29). AT 5:15 p.m. the
agents followed Cienfuegos as he drove a Cadillac to a restaurant
where he met with an unknown male in a red truck, and then
returned home (PSR ¶ 29). At 5:45 p.m. Ciefuegos drove off in
the Cadillac with Mares and they were observed driving to an auto
parts store (PSR ¶ 29). The agents also saw at the auto parts
store a Suburban owned by Ybarra (PSR ¶ 29). Cienfuegos and Mares
left the area and parked at a nearby service station (PSR ¶ 29).
A short time later Ybarra arrived at the service station and had
a conversation with Cienfuegos and Mares (PSR ¶ 29). The unknown
male arrived, picked up Ybarra, and made a short trip to secure
directions to a home which was later determined to be where he
was going to pick up a load of marihuana (PSR ¶ 29).

    At 6:48 p.m. agents followed Ybarra, Cienfuegos, and Mares
to the home on the south side of Brownsville (PSR ¶ 30). Ybarra
backed up his Suburban to the home while Mares and Ciefuegos kept
circling the area (PSR ¶ 30). At 7:28 p.m. agents followed
Ybarra as he drove his Suburban north on U.S. Highway 77 to San
Benito followed closely by Mares and Cienfuegos (PSR ¶ 30). The

agents contacted a Cameron County Sheriff's Deputy who made a traffic stop on Ybarra as he pulled into his residence (PSR ¶ 30). The deputy found that Ybarra was not wearing his seatbelt and he appeared to be very nervous (PSR ¶ 30). Ybarra consented to a search of the Suburban which led to the discovery of 570 pounds of marihuana in packages (PSR ¶ 30).

The investigation revealed that Mares brokered the delivery of the marihuana and recruited Ybarra and Cienfuegos to assist in the delivery of the marihuana to the home of an unindicted co-conspirator (PSR ¶ 34). Both Ybarra and Cienfuegos stated that Mares promised to pay them $300 to assist in the transport of the marihuana from Brownsville to San Benito (PSR ¶ 34). Ybarra used his Suburban to transport the marihuana.

IV.

GROUNDS FOR RELIEF

Ybarra contends his trial defense counsel, Mr. Sheldon Weisfeld, provided ineffective assistance of counsel by not appealing the Court's guideline computations. Ybarra asserts that the Court should have awarded him a three level credit for acceptance of responsibility despite testing positive for cocaine use while on bond, that he should have received a four level reduction under USSG § 3B1.2(a) as a minimal participant, and he was entitled to the "safety valve" reduction because he met all five criteria of 18. U.S.C. § 3553(f).

V.

ANSWER AND BRIEF

A. Jurisdiction

Ybarra frames his § 2255 as an attack on the performance of his counsel.  However, Ybarra is essentially disputing the application of the Guidelines by the Court.  The technical application of the Guidelines does not give rise to a constitutional issue subject under § 2255. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) citing *United States v. Vaughn*, 955 F.2d. 367, 368 (5th Cir. 1992).  Accordingly, Ybarra petition should be dismissed on jurisdictional grounds. However, the government will address Ybarra's claim on the merits if his petition is to be viewed as a complaint about the performance of his attorney.

B.    Ineffective assistance of counsel.

(1)    Standard of review

There are two components to any ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice.  A criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, _ U.S. _, 113 S.Ct. 838, 842 (1993)(quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)).  In *Fretwell*, the Court observed:

6

> [An] analysis focusing solely on mere outcome
> determination, without attention to whether the result
> of the proceeding was fundamentally unfair or
> unreliable, is defective.  To set aside a conviction or
> sentence solely because the outcome would have been
> different but for counsel's error may grant the
> defendant a windfall to which the law does not entitle
> him.

_ U.S. _, 113 S.Ct. at 842-43.  The "prejudice prong of the

*Strickland* test focuses on the question of whether counsel's

deficient performance renders the result of the trial unreliable

or the proceeding fundamentally unfair.  "Unreliability or

unfairness does not result if the ineffectiveness of counsel does

not deprive the defendant of any substantive or procedural right

to which the law entitles him."  *Id.* _ U.S. _, 113 S.Ct. at 844.

To prevail on his claim, Ybarra must identify the acts or

omissions that are outside the wide range of professionally

competent assistance and then demonstrate that but for counsel's

unprofessional errors the result of the proceeding would have

been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

A reviewing court must endeavor to eliminate the distorting

effects of hindsight and evaluate the facts from counsel's

perspective at the time of trial.  To this end the court will

indulge a strong presumption that counsel's conduct falls within

a wide range of reasonable professional assistance. *Id.*

The burden falls on the accused to prove a violation of

constitutional standards.  The focus is on the attorney's impact

on the adversarial process; the constitutional standards may be

met irrespective of an accused's evaluation. *United States v.
Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984). The Fifth Circuit
noted that:

> "prejudice" must be rather appreciable before a new
> trial is warranted in view of counsel's error. *See,
> e.g., Lockhart v. Fretwell*, _ U.S. _, 113 S.Ct. 838
> (1993)...,

*Spriggs v. Collins* 993 F.2d 85, 88-89 n.4 (5th Cir. 1993).

In *Fretwell*, the Supreme Court observed that the Sixth
Amendment right to counsel exists in order to protect the
fundamental right to a fair trial. The right to the effective
assistance of counsel is recognized not for its own sake, "but
because of the effect it has on the ability of the accused to
receive a fair trial. Absent some effect of the challenged
conduct on the reliability of the trial process, the Sixth
Amendment guarantee is generally not implicated." __ U.S. __,
113 S.Ct. at 842 (1993). The Fifth Circuit has "read *Fretwell* as
requiring a rather appreciable showing of prejudice. 'If an
appreciable showing of prejudice is required in the capital
context, a requirement of significant prejudice applies a
fortiori in the noncapital context.'" *Armstead v. Scott*, 37 F.3d
202, 207 (5th Cir. 1994)(quoting *Spriggs v. Collins* , *supra*).

(2)  Application of the standard.

a. Ybarra's argument regarding acceptance of responsibility.

A defendant is not automatically entitled to credit for
acceptance of responsibility by virtue of the entry of a guilty

plea. *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir.) cert. denied, 506 U.S. 925, 113 S.ct. 348, 121 L.Ed.2d 263 (1992). A district court has discretion to deny a defendant a reduction for acceptance of responsibility for failure to refrain from criminal conduct while on pretrial release. *United States v. Hooten*, 942 F.2d 878, 883, (5th Cir. 1991). Furthermore, a district court may properly deny a three-level reduction for acceptance of responsibility if a defendant tests positive for drugs while on pretrial release. *United States v. Rickett*, 89 F.3d 224, 227, (5th Cir. 1996).

Since Ybarra tested positive for cocaine while on pretrial release the Court was well within its authority in denying the reduction. Mr. Weisfeld was not ineffective on this issue.

b. Ybarra's argument regarding a minimal participant role.

Ybarra complains he is entitled to an adjustment for being a "minimal participant". In *United States v. Marmolejo*, 106 F.3d 1213 (5th Cir. 1997), the Fifth Circuit summarized the law governing this issue:

> A sentence imposed under the guidelines will be upheld if it is the result of the correct application of the guidelines to factual findings that are not clearly erroneous. E.g., *United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 214, 130 L.Ed.2d 142 (1994). Of course, we subject the application of the guidelines to plenary review. E.g., *United States v. Cheramie*, 51 F.3d 538, 542 (5th Cir.1995).
>
> Section 3B1.2 provides that a district court must reduce a defendant's offense level by four levels if it determines that he is a minimal participant in the

offense for which he was convicted, or by two levels if
the defendant was a minor participant.  U.S.S.G. §
3B1.2;  *United States v. Gadison*, 8 F.3d 186, 197 (5th
Cir.1993).  The defendant bears the burden of proving
that his role in the offense was minor or minimal.
E.g., *United States v. Brown*, 7 F.3d 1155, 1160 n. 2
(5th Cir.1993).  In making the determination, the court
must take into account the broad context of the
defendant's crime.  *United States v. Buenrostro*, 868
F.2d 135, 138 (5th Cir.1989), *cert. denied*, 495 U.S.
923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

106 F.3d at 1217.  A defendant cannot be considered a minor

participant unless he is substantially less culpable than the

average participant.  *United States v. Lokey*, 945 F.2d 825, 840

(5th Cir. 1991).  USSG § 3B1.2 comment. (n.3).  Where the

evidence shows a defendant is an average participant, the

district court does not err in refusing to award a reduction.

*United States v. Devine*, 934 F.2d at 1340.  Because most offenses

are committed by participants of roughly equal culpability, this

Court has observed that § 3B1.2 will be used infrequently.

*United States v. Allibhai*, 939 F.2d 244, 254 (5th Cir. 1991).  A

finding of fact is clearly erroneous only when a reviewing court

is left with the definite and firm conviction that a mistake has

been committed.  *United States v. Rogers*, 906 F.2d 189, 190 (5th

Cir. 1990).

A courier may be substantially less culpable than the

average participant when he is "recruited as a courier for a

single smuggling transaction involving a small amount of drugs."

USSG § 3B1.2 n.2.  A "mule" or transporter of drugs may not be

entitled to minor or minimal status.  *Buenrostro*, 868 F.2d at 137-

138.   The application of 3B1.2 hinges on culpability and not status as a courier. *Id.*   A district court "need not accept the defendant's self-serving account of his role in the drug organization." *Id.*

These principles were most recently reiterated in *United States v. Valencia-Gonzales*, 172 F.3d 344, 346 (5th Cir.1999), *cert. denied*, ____ U.S. ____, 120 S.Ct. 222, 145 L.Ed.2d 187 (1999), in which a district court's denial of minor participant status was affirmed where a courier contended he was a mere "mule", but admitted he was to receive $14,000 to transport heroin from Columbia to Houston and then meet a coconspirator in San Antonio for further travel to New York. The Fifth Circuit further found that the 1005 grams of heroin involved was a "non-trivial quantity". *Id.*   In determining what is a small amount of drugs, as discussed by application note 2 of USSG § 3B1.2, a quantity of 50 pounds of marihuana is "not a small amount of drugs." *United States v. Hare*, 150 F.3d 419 (5th Cir.1998)(affirming denial of a minor participant role adjustment for a courier).

Ybarra was not transporting a small amount of drugs since he was involved with 259 kilograms of marihuana. Accordingly, in view of note 2 of USSG § 3B1.2, he was ineligible for a role adjustment as either a minor or minimal participant.

c. Ybarra's argument regarding "safety valve".

Ybarra complains he was entitled to relief from the statutory minimum sentence under 18 U.S.C. § 3553(f) because he met all the criteria of this section.  Section 3553(f) of Title 18 of the United States Code, the so-called "safety valve provision", mandates the imposition of a guideline sentence, as opposed to a mandatory minimum sentence, if the defendant meets five conditions.  The statute provides, in toto:

> **(f) Limitation on applicability of statutory minimums in certain cases.** - Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 961, 963), the court shall impose a sentence pursuant to the guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that -
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another person to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

> (5)  not later than the time of the
>      sentencing hearing, the defendant
>      has truthfully provided to the
>      Government all information and
>      evidence the defendant has
>      concerning the offense or offenses
>      that were part of the same course
>      of conduct or of a common scheme or
>      plan, but the fact that the
>      defendant has no relevant or useful
>      other information to provide or
>      that the Government is already
>      aware of the information shall not
>      preclude a determination by the
>      court that the defendant has
>      complied with this requirement.

18 U.S.C. § 3553(f).

Ybarra is mistaken when he claims he met all five criteria for the safety valve. Ybarra does not meet the very first criteria of not having more than one criminal history point since he has three criminal history points (PSR ¶ 57, 84). Mr. Weisfeld recognized this at sentencing when the Court addressed the issue (SH 2-3). Mr. Weisfeld was therefore not ineffective.

C.   <u>Evidentiary hearing</u>.

A Section 2255 Motion requires a hearing unless the files, the motion, and the record of the case conclusively show that no relief is appropriate. 28 U.S.C. § 2255 (foll.) Rule 8(a). *United States v Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an evidentiary hearing depends upon an assessment of the record. If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v*

*Smith*, 915 F.2d 959, 964 (5th Cir. 1990). The instant controversy does not require an evidentiary hearing.

The government respectfully prays that this court enter an order summarily denying Ybarra section 2255 relief.

Respectfully submitted,

MERVYN M. MOSBACKER
UNITED STATES ATTORNEY

By:  _____

TIMOTHY G.E. HAMMER
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I, Timothy G.E. Hammer, do hereby certify that a copy of the foregoing Respondent's Answer to Section 2255 Motion and Brief has been mailed to the defendant, Mr. Benito Ybarra, #86763-079, FCI Beaumont, P.O. Box 26040, Beaumont, Texas 77720, on this the 16th day of October, 2000.

_____
TIMOTHY G. E. HAMMER
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Respondent, | § | |
| | § | |
|     vs. | § | C.R. NO. B-99-362-S1 |
| | § | |
| BENITO YBARRA,    , | § | |
|     Petitioner. | § | |
| (C.A. NO. B-00-119) | § | |

ORDER

It is hereby ORDERED that Ybarra's Section 2255 Motion is
DENIED.

SIGNED this _____ day of _____
2000.

_____
UNITED STATES MAGISTRATE JUDGE